# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

DONTRE K. JOHNSON,

    Petitioner,

    v.                                  Case No.  19-CV-577

BRIAN FOSTER,

    Respondent.

---

## DECISION AND ORDER DENYING PETITION FOR
## WRIT OF HABEAS CORPUS

---

Dontre K. Johnson, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket # 1.) Johnson was convicted of two counts of repeated sexual assault of a child and was sentenced to forty years of imprisonment, consisting of twenty-six years of initial confinement followed by fourteen years of extended supervision. (*Id.* at 2.) Johnson alleges that his conviction and sentence are unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

Johnson was charged with two counts of repeated sexual assault of a child and two counts of exposing genitals to a child in September 2011. (*State v. Johnson*, Appeal No. 2017AP1581 (Wis. Ct. App. Aug. 14, 2018), Answer to Habeas Petition ("Answer"), Ex. 13, Docket # 26-13 at ¶ 3.) During *voir dire*, the prosecutor explained that Johnson's case involved allegations of sexual assaults committed against two girls between the ages of six and twelve. (*Id.* ¶ 24.) The prosecutor asked whether, knowing those facts, anyone thought

they would be unable to sit on the jury and hear the case. (*Id.*) In response to this question, one juror, Juror 24, reported that she had been the victim of sexual assault as a child and therefore did not believe that she could be impartial. (*Id.*) Juror 24 was ultimately struck from the panel for cause. (*Id.* n.2.) The prosecutor then asked whether anyone else had been the victim of sexual assault or had family members or close friends who were victims of sexual assault. (*Id.* ¶ 5.) Juror 22 responded that her son and daughter had been sexually assaulted at ages nine and ten. (*Id.*) When asked whether she could nevertheless be fair and impartial, she responded: "I would think so." (*Id.*) Juror 22 did not reveal, however, that she herself had been sexually assaulted as a child. (*Id.*) She was ultimately selected to serve on Johnson's jury. (*Id.*)

During trial, the State voluntarily dismissed one of the exposing genitals charges. (*Id.* ¶ 6.) The remaining three counts went to the jury on September 14, 2011. (*Id.*) At approximately 4:40 p.m., the jurors sent a note to the court asking whether they would be made to stay past 5:00 p.m. (*Id.*) In response, the court informed the jurors that they "would not be made to stay past 5:00." (*Id.*) Approximately ten minutes later, the jury informed the court it had reached a verdict. (*Id.*)

The court was concerned that the jury may have rushed to reach its verdict in order to be finished by 5:00 p.m. (*Id.* ¶ 7.) Accordingly, upon bringing the jurors back into the courtroom, the court asked whether any juror felt that he or she had "not had a sufficient time for the deliberation process." (*Id.*) Only Juror 20 responded, stating: "It could have been a little more time, but, you know. It could have been, without looking at me like I'm

an idiot." (*Id.*) The court questioned Juror 20 further about whether there was a sufficient amount of time to deliberate, and Juror 20 agreed that the amount of time was sufficient. (*Id.*) The jury found Johnson guilty of all three charges. (*Id.*)

Johnson was appointed postconviction counsel, who initially filed a no-merit notice of appeal. (Answer, Ex. 2, Docket # 26-2 at 6–7.) Counsel subsequently moved to voluntarily dismiss the no-merit appeal based upon counsel's discovery of a meritorious issue to pursue in postconviction proceedings. (*Id.* at 7.) Counsel then filed a postconviction motion on Johnson's behalf raising two arguments, neither of which are presented in Johnson's petition for habeas review. (*See* Docket # 26-13 at ¶ 8.) The trial court granted Johnson's motion in part. (*Id.* ¶ 9.) Johnson appealed the portion of the trial court's order denying his motion and the court of appeals affirmed the judgment. (*Id.*)

Johnson subsequently obtained new postconviction counsel, who hired an investigator to question Juror 20 about his post-deliberation exchange with the court and whether the jurors had been able to hear the witnesses' testimony. (*Id.* ¶ 10.) According to the investigator's report, during the course of the investigation, Juror 20 revealed that Juror 22 had told the other jurors during deliberations that "she was raped by her brother and believes the child's testimony." (*Id.*) Juror 20 also told the defense investigator that "[i]n the end, [Juror 20] found the defendant guilty, because, the defendant did not testify." (*Id.*) Juror 20 stated that he "understood the defendant had a right not to testify, however, he wanted to hear from the defendant." (*Id.*)

Johnson moved for postconviction relief under Wis. Stat. § 974.06. (*Id.* ¶ 11.) He presented three arguments: (1) Juror 22 was objectively biased because she failed to reveal during *voir dire* that she had been a victim of sexual assault as a child and because she "argued to her fellow jurors for a conviction because she believed the victims to be credible by virtue of her experience as a victim of child sexual assault"; (2) trial counsel was ineffective for failing to ask the potential jurors during *voir dire* "whether they would be able to fairly decide Johnson's guilt even if he exercised his right to remain silent, which resulted in a biased juror being seated who convicted Johnson because he did not testify"; and (3) postconviction counsel was ineffective for failing to investigate and raise grounds (1) and (2). (*Id.*) The postconviction court held a two-day evidentiary hearing on Johnson's § 974.06 motion. (*Id.* ¶ 12.) Johnson did not produce Juror 20 to testify at the hearing and the court refused to admit the defense investigator's hearsay testimony about Juror 20's statements. (*Id.*) The postconviction court denied Johnson's motion. (*Id.* ¶ 13.) The Wisconsin Court of Appeals affirmed the postconviction court's denial of Johnson's § 974.06 motion. (*Id.* ¶¶ 1–34.) The Wisconsin Supreme Court denied Johnson's petition for review. (Answer, Ex. 16, Docket # 26-16.)

Johnson timely filed a habeas petition in this Court raising one ground for relief—ineffective assistance of postconviction counsel for failing to identify and litigate issues of juror bias and for failing to raise ineffective assistance of trial counsel. (Docket # 1-1 at 1.)

## STANDARD OF REVIEW

Johnson's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

5

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

When challenging a state court's decision pursuant to § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon factual findings that ignore the clear and convincing weight of the evidence. *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010). Factual determinations made by the state court are presumed correct and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## ANALYSIS

Johnson argues that his postconviction counsel was ineffective for failing to investigate and discover the alleged bias on the part of Jurors 20 and 22, as well as failing to raise trial counsel's alleged ineffectiveness for not questioning the jury panel regarding their ability to remain impartial in the event Johnson chose not to testify. He argues that, in ruling against him, that the Wisconsin Court of Appeals unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984) and unreasonably determined the facts in doing so.

As part of his Wis. Stat. § 974.06 motion for relief, Johnson argued that his postconviction counsel was ineffective by failing to identify and litigate the issues of juror bias involving Jurors 20 and 22. (Petitioner's Br. at 2, Docket # 35.) Johnson argued that he expressed several concerns to his postconviction counsel regarding how his trial was conducted, specifically, that testimony was missed because of a sleeping juror and inaudible testimony and the post-deliberation colloquy between the court and Juror 20 regarding whether Juror 20 felt that the jury had sufficient time to deliberate. (*Id.* at 7–8.) Johnson argued that his postconviction counsel did nothing to investigate these issues. However, when he subsequently retained new counsel to file a Wis. Stat. § 974.06 motion, this counsel hired an investigator to look into Juror 20's colloquy with the court. (*Id.* at 8.) During the course of this investigation, subsequent postconviction counsel learned from Juror 20 about Juror 22's past sexual abuse and about Juror 20's desire to have heard Johnson testify, despite understanding Johnson's Fifth Amendment right to not testify. (*Id.* at 10.)

The Wisconsin Court of Appeals examined *Strickland* in evaluating Johnson's claim of ineffective assistance of counsel. (Docket # 26-13 at ¶ 17.) To succeed under *Strickland*, as the Wisconsin Court of Appeals understood, one must show that counsel's performance fell below an objective standard of reasonableness and that prejudice resulted. (*Id.* (citing *Strickland*, 466 U.S. at 687–97.) The court of appeals stated that to demonstrate deficient performance, a defendant must point to specific acts or omissions by his or her attorney that were "outside the wide range of professionally competent assistance." (*Id.* (citing *Strickland*, 466 at 690.) Applying this standard, the court of appeals determined that postconviction counsel's performance was not deficient; thus, the court of appeals declined to address the prejudice prong of the analysis. (*Id.* ¶ 18.)

The court of appeals first addressed Johnson's argument that had postconviction counsel investigated the issues of testimony missed due to a sleeping juror or inaudible witnesses and the exchange between Juror 20 and the court at the end of the case, counsel would have discovered that Juror 22 was objectively biased, that Juror 20 convicted Johnson based on his failure to testify, and that trial counsel was ineffective by failing to inquire during *voir dire* whether the potential jurors could remain impartial if Johnson chose not to testify. (*Id.*)

Addressing first Johnson's argument that testimony was inaudible, the court of appeals found that there was nothing in the record to indicate that any of the jurors were unable to hear the testimony of a material witness during Johnson's trial. (*Id.* ¶ 19.) The court found that although the attorneys and trial judge at times indicated that they were

8

having difficulty hearing the testimony of one of the victims, when the issue arose, the judge and the prosecutor addressed it by asking the witness to speak up and into the microphone. (*Id.*) The prosecutor also addressed the issue at times by repeating the victim's previous answer and then asking her to confirm that it was, in fact, her testimony. (*Id.*) The judge also asked the jurors twice during trial whether they could hear the victim's testimony. (*Id.* ¶ 20.) In response to the first inquiry, three jurors expressly responded that they could hear the victim, while a fourth stated, "It's tough." (*Id.*) The trial judge followed-up on the juror's statement, asking "It's tough but we're okay?"—the juror did not respond that he or she was not "okay," meaning that he or she was unable to hear the victim. (*Id.*) Later during the victim's testimony, the trial judge specifically asked the jurors to "let me know if you are having trouble hearing"; thereafter, none of the jurors raised any concerns about audibility. (*Id.*) The court of appeals concluded that although the record indicated that the victim was speaking softly and was somewhat difficult to hear, that there was nothing in the record to indicate that any jurors were actually unable to hear her testimony. (*Id.* ¶ 21.) Thus, it was not reasonable to expect that, upon reading the trial transcript, postconviction counsel would have determined further investigation regarding that issue was warranted. (*Id.*)

Regarding the issue that postconviction counsel should have investigated Johnson's claim of a sleeping juror, the court of appeals found that the only reference to a sleeping juror in the trial transcript occurred *before* the evidentiary portion of the trial. (*Id.* ¶ 22.) In response, the trial court stated that it would "keep an eye on" the jurors going forward. (*Id.*) However, the court of appeals noted that nowhere in the record did the judge state that the

juror sleeping reoccurred. Thus, the court of appeals concluded that nothing in the record would have prompted a reasonable attorney to hire someone to investigate whether the juror was sleeping. (*Id.*)

Also, the court of appeals found that postconviction counsel was not deficient for failing to investigate Juror 20's post-deliberation exchange with the trial judge. (*Id.* ¶ 23.) The court of appeals found that while Johnson argued the exchange should have prompted postconviction counsel to investigate whether the jury truly had sufficient time to deliberate, the court of appeals concluded that Juror 20 was the only juror to raise any concern and did not say the time was insufficient, but stated that there "could have been a little more time." (*Id.*) However, Juror 20 subsequently confirmed to the trial judge that the jury did have sufficient time to deliberate. (*Id.*) Additionally, the record shows that the jury was polled and Juror 20 confirmed the verdict. (*Id.* ¶ 24 n.4.) Given this record, the court of appeals found that there was no basis for a reasonable postconviction counsel to believe further investigation was necessary. (*Id.*)

Johnson also argued that further investigation into these three issues—witness audibility, the sleeping juror, and Juror 20's post-deliberation colloquy—would have necessarily revealed the alleged bias on the part of Jurors 20 and 22, as well as trial counsel's alleged ineffective assistance. (*Id.* ¶ 25.) The court of appeals determined, however, that these assertions were purely speculative. (*Id.*)

Finally, the court of appeals determined that Johnson's claims that Juror 22 was objectively biased and that trial counsel was ineffective for failing to ask during *voir dire*

whether the potential jurors could be impartial if Johnson exercised his right to remain silent, were barred by *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994) because the issues were not previously raised in a postconviction motion. (*Id.* ¶¶ 26–27.) Although ineffective assistance of postconviction counsel can constitute a sufficient reason to overcome the *Escalona* bar, the court of appeals found that it had already concluded that postconviction counsel was not ineffective by failing to investigate and discover the issues Johnson now raises. (*Id.* ¶ 28.)

Johnson does not contend that the court of appeals' decision was contrary to *Strickland*. Indeed, the court of appeals cites the correct legal standard. Rather, he claims that the court of appeals made two errors—one under § 2254(d)(1) and another under § 2254(d)(2). However, while Johnson very generally asserts that the court of appeals did not reasonably apply *Strickland* under § 2254(d)(1) (*see* Docket # 35 at 4; Docket # 38 at 9), he does not explain how the court of appeals unreasonably applied *Strickland* to the facts of his case. While Johnson may disagree with the court of appeals' conclusion, review under the "unreasonable application" clause of § 2254(d)(1) is limited to "whether the Court extended a rule to an inapplicable context or refused to extend a rule to an applicable context." *See Ben-Yisrayl v. Buss*, 540 F.3d 542, 548 (7th Cir. 2008). Neither situation is present here; the Wisconsin Court of Appeals reasonably applied *Strickland* to the facts of the case.

Rather, the crux of Johnson's argument falls under § 2254(d)(2)—he argues that the court of appeals unreasonably determined the facts in light of the evidence presented in the state court proceedings. (Docket # 27 at 14; Docket # 35 at 7–14; Docket # 38 at 7–8.) A

petitioner's challenge to a state court decision based on a factual determination under §
2254(d)(2) will not succeed unless the state court committed an "unreasonable error";
meaning the state court determined an underlying factual issue against the clear and
convincing weight of the evidence. *Ben-Yisrayl*, 540 F.3d at 549.

As to the audibility of the victim's testimony, Johnson has not shown that the court
of appeals' factual determination ignored the clear and convincing weight of the evidence.
Johnson cannot point to any instance in the record, not cited by the court of appeals, to
support his assertion that the jury could not hear the evidence. Although he argues that
"jurors had difficulty hearing material testimony of the alleged victim," (Docket # 35 at 11)
and otherwise argues that the record "does reflect several times where the jurors could not
and/or had difficulty hearing testimony" (Docket # 27 at 15), what he cites to are portions
of the record where either *defense counsel or the court* asked the victim to speak up or repeat
testimony because they were having difficulty hearing her (Transcript of Sept. 13, 2011 Jury
Trial at 17–18, 22–23, 26–27, 34, 47, Docket # 26-19). Beyond the single instance addressed
by the trial court and court of appeals, the record does not reflect that the jurors could not
hear the victim's testimony. Johnson does not show that the court of appeals' findings
contravene the clear and convincing weight of the evidence. Thus, Johnson's argument fails.

As to the sleeping juror issue, Johnson again cannot overcome the presumption of
correctness given to the court of appeals' factual findings. In fact, Johnson acknowledges
that he "never concocted an argument alleging that the sleeping juror was a meritorious
issue," but raised it to show "a pattern" of the court of appeals "unreasonably determining

12

facts in their decision making." (Docket # 27 at 14.) But Johnson does not argue how the court of appeals' finding regarding the sleeping juror contravenes the clear and convincing weight of the evidence. As such, Johnson's argument also fails as to this factual finding.

As to the colloquy with Juror 20, again, Johnson fails to overcome the presumption of correctness accorded factual determinations made by the state court under § 2254(e)(1). Johnson cites to multiple facts in the record that he argues supports his contention that the court of appeals erred. (Docket # 35 at 8–10.) The court of appeals, however, addressed these facts (Docket # 26-13 at ¶¶ 6–7) and found that the trial court questioned Juror 20, who confirmed that he did feel they had enough time to deliberate despite his previous statement that it "could have been a little more time" (*id.* ¶ 23).

The other facts cited by Johnson also do not overcome the presumption of correctness. Johnson argues that the fact the trial judge specifically told the jury that they would not have to stay past 5:00 p.m. would cause an attorney to investigate into Juror 20 further. (Docket # 35 at 9.) I disagree. The trial judge was clearly concerned about the jurors rushing to a verdict, which is why the judge asked the jurors whether they felt they had enough time to deliberate. When Juror 20 expressed some hesitance, the judge explored the concern. Johnson also argues that because the judge stated "when I pressed [Juror 20], he said it was sufficient," indicates that Juror 20 only changed his answer because the judge pressured him. (*Id.* ¶¶ 9–10.) Nothing in the transcript of the colloquy indicates that the judge coerced Juror 20 into changing his statement, and the judge's later use of the word "press" does not prove otherwise. As such, Johnson is not entitled to relief on this ground.

Regarding Johnson's assertion that investigation into the issues he raised to postconviction counsel would have necessarily revealed juror bias and the ineffective assistance of trial counsel, the court of appeals determined that his argument was "purely speculative." Johnson disagrees with the court's conclusion, but again counters it with speculation. He argues that it "stands to reason" that investigation into the issues he raised would have discovered other meritorious issues. (Docket # 35 at 12.) For example, he argues that Juror 20 would have divulged the information he told the investigator regarding Juror 22's alleged bias and his own. (*Id.* at 12–13.) Johnson's continued speculation, however, does not overcome the court of appeals' presumption of correctness. As the court of appeals correctly determined, Juror 20's colloquy with the trial judge provided no basis for counsel to begin digging into jury deliberations, much less clue counsel into the possibility of juror bias. Johnson is not entitled to relief on this ground.

Johnson also asserts that Juror 22 was objectively biased and his postconviction counsel was ineffective for failing to raise trial counsel's ineffectiveness for not questioning the venire regarding their potential bias if Johnson chose to exercise his Fifth Amendment right to not testify. The court of appeals found that even though these claims were barred by *Escalona*, to the extent the bar was excused by the alleged ineffective assistance of postconviction counsel, the claim failed because postconviction counsel was not ineffective. Johnson does not develop an argument addressing the court of appeals' finding regarding the *Escalona* bar, nor does he show that the court of appeals' alternative finding runs afoul of *Strickland*. Thus, Johnson has not shown he is entitled to habeas relief on this ground.

14

I further note that Johnson also raised the issue of alleged juror bias before the state court as a claim under Wis. Stat. § 752.35, a state statute that confers "formidable" discretionary power upon the Wisconsin Court of Appeals to reverse a circuit court and to order a new trial in "exceptional cases." *State v. Jensen*, 2011 WI App 3, ¶ 97, 331 Wis.2d 440, 794 N.W.2d 482 (2010). In a supplemental brief before this Court, Johnson argues extensively regarding the issue of juror bias. (Docket # 38.) However, he specifically states that he is not arguing "an issue of ineffective assistance of counsel, or what Johnson's Direct Appeal Counsel . . . did or did not do." (Docket # 38 at 5.) To the extent Johnson challenges the court of appeals' determination under Wis. Stat. § 752.35 denying him a new trial due to juror bias, this is an issue of state law not cognizable under federal habeas corpus review. *See Lowe v. Abrahamson*, 51 F.3d 275, 1995 WL 150585, at *3 (7th Cir. 1995) ("Moreover, we note that Lowe's request for a new trial in the 'interest of justice' pursuant to § 752.35 of the Wisconsin Statutes is simply not cognizable in a petition for federal habeas corpus review."); *Schmidt v. McCullough*, No. 14-CV-287-BBC, 2014 WL 2565655, at *1 (W.D. Wis. June 6, 2014) ("Wis. Stat. § 752.35 does not implicate the federal constitution or federal laws.").

For all of these reasons, Johnson fails to demonstrate that he is entitled to habeas relief. His petition is denied and the case is dismissed.

## CONCLUSION

Johnson alleges that he is entitled to habeas relief due to ineffective assistance of postconviction counsel. I do not find that the Wisconsin Court of Appeals' decision on the

merits of Johnson's claims was contrary to, or involved an unreasonable application of *Strickland*, nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. Thus, Johnson's petition for a writ of habeas corpus is denied.

## CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 and n.4).

Jurists of reason would not find it debatable that Johnson is not entitled to habeas relief. Thus, I will deny Johnson a certificate of appealability. Of course, Johnson retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's motion to proceed absent state's reply (Docket # 39) is **MOOT**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 7th day of May, 2021.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge